IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JAY MACHLEIT, individually; TRIPLE C DEVELOPMENT, INC.; MACH-1 Express Wash, LLC;<br><br>*Plaintiffs,*<br><br>v.<br><br>KAREN HUTTON; HUTTON CHERRY HILL NJ ST, LLC; and HUTTON ST 17, LLC,<br><br>*Defendants*<br><br>and<br><br>HUTTON ST 17, LLC and KAREN HUTTON,<br><br>*Counter-Plaintiffs,*<br><br>v.<br><br>JAY MACHLEIT, individually; TRIPLE C DEVELOPMENT, INC.,<br><br>*Counter-Defendants.* | Case No.: 1:20-cv-270<br><br>JURY DEMAND |

---

## ANSWER AND COUNTERCLAIM

---

COMES NOW, Defendant, Karen Hutton (hereinafter, "Defendant" or "Hutton" or "Hutton LLCs"), by and through counsel, and pursuant to Rules 8, 12, and 13 of the <u>Federal Rules of Civil Procedure</u>, hereby answers the numbered paragraphs of the Complaint and thereafter states its affirmative defenses:

1

## THE PARTIES

1.    Upon information and belief, Hutton LLCs admit the allegations of paragraph 1 of the Complaint.

2.    Upon information and belief, Hutton LLCs admit the allegations of paragraph 2 of the Complaint.

3.    Hutton LLCs do not have sufficient information or knowledge to either admit or deny the allegations concerning the Members of Mach-1. Hutton LLCs aver that Cayla Machleit, as Head of Operations for Mach-1, had actual and/or apparent authority to speak for and act on behalf of Mach-1 and did in fact speak for and act on behalf of Mach-1 as to material matters involving and concerning Hutton LLCs and affiliate entities. Upon information and belief, Hutton LLCs admit the remaining allegations of paragraph 3 of the Complaint.

4.    For purposes of this litigation only, Hutton LLCs admit that it may be served as alleged and admit the remaining allegations of paragraph 4.

5.    For purposes of this litigation only, Hutton LLCs admit the allegations stated in paragraph 5 of the Complaint. In making this admission, Hutton LLCs are not accepting service and are not waiving any and all defenses that may be raised if and when one or more of the other Defendants are served.

6.    For purposes of this litigation only, Hutton LLCs admit the allegations stated in paragraph 6 of the Complaint. In making this admission, Hutton LLCs are not accepting service and are not waiving any and all defenses that may be raised if and when served.

7.    Hutton LLCs deny the allegations as pled.

## JURISDICTION AND VENUE

8.    Hutton LLCs admit the allegations for the purpose of this litigation only.

9.      Hutton LLCs deny any and all allegations of acts or omissions on the part of Hutton. Hutton LLCs admit the remaining allegations for the purpose of this litigation only.

## FACTUAL ALLEGATIONS

10.     For the purpose of this litigation only, Hutton LLCs admit the allegations.

11.     Hutton LLCs admit that various corporate entities that use in part "Hutton" as a name operate in real estate development from a Chattanooga principal place of business. Hutton LLCs deny the remaining allegations as pled.

12.     Hutton LLCs deny the allegations as pled.

13.     Hutton LLCs admit that in around December 2018 it discussed with Machleit/Plaintiffs the prospect of their respective businesses working together in car wash operations. Hutton LLCs admit that the original thought was that Hutton LLCs would work in development and that Machleit/Plaintiffs would work in operations if a carwash operations joint venture agreement could be agreed upon. Hutton LLCs deny the remaining allegations as pled and aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

14.     Hutton LLCs deny the allegations as pled since the allegations misstate the nature of the initial discussions. More specifically, Hutton LLCs discussed with the Machleit/Plaintiffs the concept of a car wash operations joint venture agreement. The creation of a suitable car wash operations joint venture agreement was dependent upon variables that would need to be addressed and a meeting of the minds that would need to be reached for a car wash operations joint venture agreement to be suitable to the parties. With respect to alleged guarantees, Hutton LLCs required the same of Machleit after a course of interactions and dealings with Machleit/Plaintiffs that raised concerns about the financial capabilities of Machleit/Plaintiffs. In light of the financial outlay by

3

Hutton LLCs associated with the acquisitions of real properties and equipment without a car wash operations joint venture agreement in place, Hutton LLCs began to require the personal guarantees of leases executed by Machleit/Plaintiff-entities that Machleit freely executed. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

15.     Hutton LLCs deny the allegations as pled in so far as the allegations explicitly and/or implicitly indicate in the context of the Complaint as a whole that Machleit/Plaintiffs were/was duped into beginning the process of trying to reach mutually agreeable terms and conditions for a car wash operations joint venture agreement that would govern the way and manner that the car wash operations were handled. Hutton LLCs were willing to explore the opportunities of reaching a car wash operations joint venture agreement with Machleit/Plaintiffs on the belief that Machleit/Plaintiffs would negotiate and work in good faith and had the financial capacity to satisfy its/their responsibilities to Hutton LLCs. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

16.     Hutton LLCs deny the allegations as pled because the allegations as stated, especially when read in the context of the fallacious allegations for the remainder of the Complaint, try to create an operations "joint venture relationship" that was well defined and binding. A more accurate and therefore fair description is that Hutton LLCs and Machleit/Plaintiffs began the process of trying to reach mutually agreeable terms and conditions for a car wash operations joint venture agreement that would apply to carwash operations. The original thought was that Hutton LLCs would be the developer and that Hutton LLCs and Machleit/Plaintiffs would work together in operations under the terms of a car wash operations joint venture agreement if such an agreement

4

could be reached. As they worked toward trying to reach such a car wash operations joint venture agreement, Hutton LLCs and Machleit/Plaintiffs took certain actions such as Machleit/Plaintiffs providing input as to carwash locations and Hutton LLCs and Machleit/Plaintiffs creating separate limited liability companies with a goal of operating certain carwashes. As they worked toward trying to reach mutually acceptable terms for a car wash operations joint venture agreement, the responsibilities and the obligations that originally seemed to make a car wash operations joint venture viable changed, and any meeting of the minds related to the same was in the end revealed as being unrealistic. After a period of time spent dealing with Machleit/Plaintiffs, the ability of Machleit/Plaintiffs to meet the responsibilities and obligations that were originally envisioned came into question. And as will be hereinafter revealed by an e-mail from Cayla Machleit as Head of Operations on January 31, 2020 and with other documentation, Machleit/Plaintiffs required terms and conditions for a car wash operations joint venture agreement that were foolish from the business perspective of Hutton LLCs and accordingly unacceptable. Machleit/Plaintiffs was/were financially unhinged and incapable of funding its/their commitment to the car wash operations. This fact was ultimately revealed to Hutton LLCs despite Machleit's/Plaintiffs' representations and concealments to the contrary. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

17.     Hutton LLCs deny the allegations as pled because the allegations as stated, especially when read in the context of the fallacious allegations for the remainder of the Complaint, try to portray an operations "joint venture relationship" as having been well defined and binding. A more accurate and therefore fair description is that Hutton LLCs and Machleit/Plaintiff began the process of trying to reach mutually agreeable terms and conditions for a car wash operations

5

joint venture agreement that involved carwash operations. An original idea behind the start of that process was for the parties to work as generally outlined in paragraph 17 of the Complaint. But those ideas concerning a division of responsibility proved to be untenable and unsuitable. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

18.     Hutton LLCs deny the allegations as pled because the allegations, especially when taken in the context of the fallacious allegations that make up the remainder of the Complaint, might lead one to believe that the parties were able to finally come to mutually acceptable terms for a car wash operations joint venture agreement. As is plainly revealed by the January 31, 2020 e-mail **(Exhibit A)** of Cayla Machleit, the terms and conditions of a car wash operations joint venture agreement were not mutually agreed upon. A more accurate and therefore fair description is that Hutton LLCs and Machleit/Plaintiffs began the process of trying to reach mutually agreeable terms and conditions for a car wash operations joint venture agreement involving carwash operations. An early idea behind the start of that process was for the parties to work as generally outlined in paragraph 18 of the Complaint. But those ideas concerning a division of responsibility and ownership proved to be unfair and unsuitable to Hutton LLCs. Machleit/Plaintiffs proved to be incapable of providing or unwilling to provide operations terms that made good business sense to Hutton LLCs especially in light of the fact that Hutton LLCs would be required to fund 100% of the car wash operations which was a huge and unexpected need of Machleit/Plaintiffs. As to the allegation of a parent company that would be owned by Machleit/Plaintiffs, the allegation is denied, and such allegation is further proof of a failure on the part of Machleit/Plaintiffs to achieve a meeting of the minds with Hutton LLCs which did not envision Machleit/Plaintiffs owning a parent company that would control any aspect of Hutton LLCs. Hutton LLCs aver that the

6

allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

19.     Hutton LLCs deny the allegations stated in paragraph 19 because the allegations are a misrepresentation of Machleit's/Plaintiffs' "performance." Hutton LLCs admit that Machleit/Plaintiffs created LLC's as part of the process of the ongoing discussions and efforts to reach mutually acceptable terms and conditions for a car wash operations joint venture agreement. Hutton LLCs deny that the mere creation of "numerous LLC's" constituted "substantial performance." Hutton LLCs was also creating LLC's at its own costs and expenses in effort to move forward with the general concept. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

20.     Hutton LLCs deny that Machleit/Plaintiffs was/were a friend because friends do not mislead friends by withholding information and by not being forthright with information that is critical to the ability to fulfill plans with a view toward achieving a desired end; do not fail to fulfill responsibilities and obligations under Lease Agreements; and do not violate Settlement Agreements such as was done by Machleit/Plaintiffs in the handling of the Attalla facility, the Cherry Hill sales/purchase agreement, and obligations concerning the Georgetown property; do not "slow-pay/no-pay" a contractor such as Berry Construction Co., which required the filing of a Mechanic's Lien and Lawsuit to get payment that was owed for good work done; do not require another party to file 14 lawsuits to get judgments for what was clearly owed; do not withhold financial information that is or likely would be relevant to closings; do not accept money for exclusivity and yet not work in good faith to fulfill obligations associated with planned exclusivity; etc. Hutton LLCs deny the remaining allegations of paragraph 20. As is clearly illustrated by the

record, on December 22, 2019 and thereafter, Hutton LLCs was still trying to reach a mutually acceptable car wash operations joint venture agreement with Machleit/Plaintiffs. As late as January 31, 2020, Machleit/Plaintiffs was/were still demanding terms and conditions for a car wash operations joint venture agreement that were wholly unacceptable to Hutton LLCs. See **Exhibit A**. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

21.     Hutton LLCs deny the allegations as pled if Machleit/Plaintiffs is/are stating or implying that Hutton LLCs had any more control over who had the right to prepare documents related to the hoped-for car wash operations joint venture agreement than Machleit/Plaintiffs. Hutton LLCs admit that it offered to have counsel prepare a proposed car wash operations joint venture agreement at its own cost and to further dialogue and which actually saved Machleit/Plaintiffs from all attorney fees and costs related to the preparation of the initial draft of the car wash operations joint venture agreement that Cayla Machleit rejected. Iterations of a proposed car wash operations joint venture agreement were exchanged with Machleit/Plaintiff demanding changes all the way up to January 31, 2020, when Cayla Machleit issued the e-mail that affirmed the lack of any car wash operations joint venture agreement that was mutually acceptable and made demands upon Hutton LLCs that resulted in the cessation of further discussion. Hutton LLCs realized that Machleit/Plaintiffs was/were not ruled by the principle of reason. Upon information and belief, Hutton LLCs aver that Machleit/Plaintiffs relied upon attorneys who were retained by Machleit/Plaintiffs to analyze and modify and suggest proposed transactions in its dealings with Hutton LLCs. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

22.     Hutton LLCs deny the allegations as pled if Machleit/Plaintiffs is/are stating or implying that Hutton LLCs duped Machleit/Plaintiffs into working with Hutton LLCs toward a goal of reaching a mutually satisfactory car wash operations joint venture agreement. Hutton LLCs admit that Machleit/Plaintiffs provided information to Hutton LLCs during that process that ultimately proved to be fruitless given the January 31, 2020 demands of Machleit/Plaintiffs. The information and documentation that Machleit/Plaintiffs provided was mainly useless to Hutton LLCs and required time, work, and expense on the part of Hutton LLCs to make it of any use. The information that Machleit/Plaintiffs provided that was of any use came from an entity that is available to all who choose to become involved in the operation of car washes. Even assuming arguendo that Machleit/Plaintiffs provided any proprietary information, which is denied, Machleit/Plaintiffs did nothing to protect or safeguard information that is now represented as being proprietary. Again, Hutton LLCs deny that Machleit/Plaintiffs provided Hutton LLCs with information that was not already generally known to the industry and that was not already well-known by Hutton LLCs through its prior car wash development work.  Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

23.     Hutton LLCs deny the allegations as pled in so far as the same seem to imply that Hutton LLCs interactions and dealings with Machleit/Plaintiffs convinced Machleit/Plaintiffs to do something that it/they did not freely and voluntarily explore with Hutton LLCs, i.e., the possibilities for the two parties to mutually agree upon the terms and conditions of a car wash operations joint venture agreement for the operation of car washes. Hutton LLCs admit that it wanted to reach such an agreement with Machleit/Plaintiffs as illustrated by efforts up to December 22, 2019 and thereafter. Hutton LLCs admit that it wanted to develop car washes in

9

North and South Carolina and in other locations and wanted to lease the same to Machleit/Plaintiffs under terms and conditions that were mutually agreeable to the parties if such a meeting of the minds could be achieved. Hutton LLCs admit that it incurred costs for the purchase of commercial real estate and equipment (as to Attalla, Cedar Town, Cherry Hill, Forest City, Thomasville, etc.) to try to effectuate the development of car washes. The remaining allegations concerning "another entity unrelated to this case" are irrelevant to the litigation and do not require responsive pleading in this case and should be stricken. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

24.    Hutton LLCs deny the allegations as pled in so far as the same seem to imply that Hutton LLCs' interactions and dealings with Machleit/Plaintiffs convinced Machleit/Plaintiffs to do something that it/they did not freely and voluntarily explore with Hutton LLCs, i.e., the possibilities for the parties to mutually agree upon the terms and conditions of a car wash operations joint venture agreement for the operation of car washes. Hutton LLCs admit that it wanted to reach such an agreement with Machleit/Plaintiffs as illustrated by efforts up to December 22, 2019 and thereafter. Hutton LLCs admit that Machleit/Plaintiffs visited and formed opinions about proposed sites and that Hutton LLCs incurred costs associated with the acquisition of real and personal property while trying to come to mutually agreeable terms and conditions for a car wash operations joint venture agreement that Machleit/Plaintiffs ultimately rejected on January 31, 2020 after months of negotiations between the parties. The allegations of Machleit/Plaintiffs in paragraph 24 of the Complaint illustrate the problems with Machleit's/Plaintiffs' position, i.e., Hutton LLCs invested development funds; paid for costs and expenses of Machleit/Plaintiffs associated with exploration of certain sites; provided input to help

10

Machleit/Plaintiffs extricate itself/themselves from poor financial situations and poor business judgments; lent business expertise and development and financial assistance to help Machleit/Plaintiffs overcome serious self-created problems; etc., in furtherance of the hoped-for goal of a car wash operations joint venture agreement. More specifically, Hutton LLCs made the following recommendations and many others:

Partial Real Estate Action List:

1723 Peekskill was a property owned by Machleit/Plaintiffs, who were "underwater" on the loan. It/they was/were $300,000 short of the loan amount and were going to try to sell the property to a church for $3.0 million. It/they was/were losing a substantial amount of money each month and was/were unable to meet the real estate tax obligation.

1721 Peekskill was an AutoZone in the RIC transaction. Hutton bought the property at market value and helped Machleit/Plaintiffs avoid a real estate broker fee.

910 County Road was Daniel Johnson's house. Machleit/Plaintiffs got Mr. Johnson, who was an employee, to take a mortgage on his home for Machleit/Plaintiffs to get cash to make ends meet.

1441 Justine Road, Flower Mound was an AutoZone deal that Machleit/Plaintiffs undertook despite not having the financial capacity to meet cost obligations. Berry Construction built this AutoZone for Machleit/Plaintiffs, who refused to timely pay for the work.

One-Stops located in Highland Village and Flower Mound were open and were losing money, and Southlake was not open and was losing money related to a lease agreement. These One-Stops deals were draining money and needed to be addressed in order to help the financial viability of Machleit/Plaintiffs.

Hutton LLCs helped Machleit/Plaintiffs with budgeting, Bank relationships, and debt management in order to reduce the monthly outlay of cash and better lending rates so that Machleit/Plaintiffs would be profitable.

Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

25.     As to North Carolina properties, Hutton LLCs admit the allegations as to the named locations. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

26.     Hutton LLCs admit that its attorneys prepared documents that concerned efforts to reach a mutually agreeable car wash operations joint venture agreement that was never achieved. Hutton LLCs deny the allegations concerning any Machleit's/Plaintiffs' parent company controlling any aspect of Hutton LLCs with respect to any envisioned joint venture. By using Hutton LLCs' attorneys to draft the initial proposal, Machleit/Plaintiffs saved costs. Upon information and belief, Hutton LLCs aver that Machleit/Plaintiffs relied upon attorneys who were retained by Machleit/Plaintiffs to analyze and to prepare proposed transactions in its dealings with Hutton LLCs. In so far as Machleit/Plaintiffs is/are implying or directly stating that Hutton LLCs did not contribute time and incur expense in preparing draft agreements as part of the negotiations associated with a hoped-for joint venture, Hutton LLCs deny the allegations. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

27.     Hutton LLCs deny the allegations as pled. The Agreements that Machleit/Plaintiffs executed during the time that the parties were trying to reach a mutually acceptable car wash operations joint venture agreement are controlling over the rights and responsibilities that are governed by each of the Agreements which speak for themselves. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

28.     Hutton LLCs deny the allegations as pled. The Agreements that Machleit/Plaintiffs executed during the time that the parties were trying to reach a mutually acceptable car wash operations joint venture agreement are controlling over the rights and responsibilities that are governed by each of the Agreements which speak for themselves. In support of this denial of Machleit's/Plaintiffs' allegations, see the Settlement Agreement and Release of All Claims and the

Settlement Terms that are attached hereto as **Exhibits B** and **C** respectively wherein the issues that Machleit/Plaintiffs now seek(s) to raise as to the referenced properties in North Carolina, South Carolina, New Jersey, Alabama, Georgia, Florida, etc., were resolved or should have been resolved under the terms and conditions of **Exhibits B** and **C**. For all assignments, Hutton LLCs paid good and valuable consideration to Machleit/Plaintiffs. Accord and satisfaction are therefore a defense as to any and all claims that Machleit/Plaintiffs is/are hereby trying to make. Machleit/Plaintiffs misled Hutton LLCs in order to get Hutton LLCs to invest time and money to assist Machleit/Plaintiffs out of its/their self-created financial problems and poor business decisions. Hutton provided substantial assistance to Machleit/Plaintiffs such as reimbursement of out-of-pocket expenses and payment of development fees prior to Hutton LLCs' involvement. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

29.     Hutton LLCs deny the allegations as pled. The Agreements that Machleit/Plaintiffs executed during the time that the parties were trying to reach a mutually acceptable car wash operations joint venture agreement are controlling over the rights and responsibilities that are governed by each Agreement which speak for themselves. In support of this denial of Machleit's/Plaintiffs' allegations, see the Settlement Agreement and Release of All Claims and the Settlement Terms that are attached hereto as **Exhibits B** and **C** respectively wherein the issues that Machleit/Plaintiffs now seek(s) to raise as to the referenced properties in North Carolina, South Carolina, New Jersey, Alabama, Georgia, Florida, etc., were resolved or should have been resolved under the terms and conditions of **Exhibits B** and **C**. For all assignments, Hutton LLCs paid good and valuable consideration to Machleit/Plaintiffs. As examples, Hutton LLCs paid a total consideration of $198,287.69, including a development fee of $82,191.00, to Machleit/Plaintiffs

13

for Gloucester and Hutton LLCs paid a total consideration of $251,677.96, including a development fee of $107,309.59, to Machleit/Plaintiffs for Millville. Hutton LLCs' payment of development fees for just these two properties in the total amount of $189,500.59 belies any allegations on the part of Machleit/Plaintiffs about any loss sustained by it/them as to these two properties, and the contracts that were signed did not provide for any buy-back rights and show significant consideration paid by Hutton LLCs for the two sales. In doing so, Hutton LLCs took those financial pressures off of Machleit/Plaintiffs. Accord and satisfaction are therefore a defense as to any and all claims that the Plaintiffs are hereby trying to make. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

30.     To assist with Machleit's/Plaintiffs financial limitations and problems with ICWG, Hutton LLCs admit that a "Hutton" company purchased a site in Cedartown, GA in June 2019 and a site in Attalla, AL in November 2019 and gave Machleit/Plaintiffs the opportunity to lease a car wash at each site subject to the terms and conditions set forth in the Agreements, each of which speaks for itself and governs the issue addressed. As to both properties, Machleit/Plaintiffs was/were not able to satisfy pre-existing obligations and was/were not able to address financial encumbrances related to its/their own poor business decisions and sought the assistance of Hutton LLCs. Such financial needs/problems on the part of Machleit/Plaintiffs was/were not originally known to Hutton LLCs due to the failure of Machleit/Plaintiffs to fully or fairly reveal its/their true capacities or limitations. But for the assistance of Hutton LLCs, Machleit/Plaintiffs could not have completed the full development of the two properties, completed the purchase of equipment and signage for either property, opened either car wash, purchased the chemicals needed for car wash operations, hired the employees to work at either property, etc. Hutton LLCs aver that the

14

allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

31.     Hutton LLCs deny the allegations as pled because the Letter Agreement speaks for itself and governs all issues related to the same. As stated in that Letter Agreement which is attached hereto as **Exhibit D**, "The Tenants [Machleit] hereby agree that each Landlord [Hutton entities] shall have the right to terminate its Lease by provision of written notice to the Tenant, which right may be exercised in each Landlord's *sole* discretion…. The undersigned specifically agree that the terms of the Exhibit D of the Post-Closing Agreement between Hutton Mach-1 Cedartown, LLC and Triple C Development, Inc. dated June 7, 2019 describing the Principal Terms of the JV Agreement ***will not be binding upon the parties***; it being the intent of the parties that the JV Agreement itself will be the binding agreement regarding the Principal Terms of the JV Agreement ***upon execution*** of the JV Agreement by an affiliate of the Landlords and affiliate of the Tenants." (emphasis added). As stated by Cayla Machleit on January 31, 2020, the parties had not reached a meeting of the minds concerning a car wash operations joint venture agreement, and in light of the unreasonable position taken by Machleit/Plaintiffs in its/their January 31, 2020 demands, Hutton LLCs abandoned the idea of a car wash operations joint venture and issued Notices of Termination in accordance with its rights as quoted above from **Exhibit D**. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

32.     Hutton LLCs deny the allegations as pled. The Agreements that Machleit/Plaintiffs executed during time that the parties were trying to reach a mutually acceptable car wash operations joint venture agreement are controlling over the rights and responsibilities that are governed by each Agreement which speak for themselves. In support of this denial of

Machleit's/Plaintiffs' allegations, see the Settlement Agreement and Release of All Claims and the Settlement Terms that are attached hereto as **Exhibits B** and **C** respectively wherein the issues that Machleit/Plaintiffs now seek(s) to raise as to the referenced properties in North Carolina, South Carolina, New Jersey, Alabama, Georgia, Florida, and Pennsylvania, were resolved or should have been resolved under the terms and conditions of **Exhibits B** and **C**. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

33. Hutton LLCs admit that representatives for "Hutton" businesses met with Machleit/Plaintiffs and representatives for Machleit/Plaintiffs to discuss terms and conditions for a car wash operations joint venture agreement and to address financial problems on the part of Machleit/Plaintiffs that were becoming more apparent. Accordingly, adjustments were in need of discussion and implementation. Machleit's/Plaintiffs' financial troubles was/were not honestly disclosed to Hutton LLCs and such failure to disclose and the withholding of vital information that should have been disclosed caused the major changes that had to be implemented and caused the delay in resolution of whether a joint venture agreement could be achieved. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

34. Hutton LLCs deny the allegations as pled to the extent, if any, Machleit's/Plaintiffs' allegations try to portray a bargaining scenario that was unfair or a scenario that was initially fixed and unchangeable. Machleit/Plaintiffs accepted a proposal from Hutton LLCs, who then spent money on attorney time preparing an agreement that included the terms that Machleit/Plaintiffs accepted and then later rejected on January 31, 2020 via e-mail of Cayla Machleit, who made the unreasonable demands which were not accepted and which served as a basis for Hutton LLC's

16

abandonment of further discussions and the issuance of the Notices of Termination on February 5, 2020. (**Collective Exhibit E**). Hutton LLCs was unwilling to 100% fund a joint venture agreement with someone as financially unsound as Machleit/Plaintiffs and allow Machleit/Plaintiffs to dictate terms that permitted Machleit/Plaintiffs to start a competing car wash company. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

35.     Hutton LLCs deny the allegations in so far as the same seem to imply that Machleit/Plaintiffs had invested more time and money than Hutton LLCs into trying to work toward a meeting of the minds as to the terms and conditions of a car wash operations joint venture agreement. As late as January 31, 2020, Machleit/Plaintiffs was/were still making unreasonable demands related to the ongoing discussion of a possible operations joint venture. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

36.     Hutton LLCs deny the allegations and aver that such allegations are Machleit's/Plaintiffs' attempt to introduce false and self-serving proof into the record that should be controlled by the Agreements that Machleit/Plaintiffs executed over the course of the parties attempts to reach agreement as to an operations joint venture. Over the course of time, Machleit did not perform, was financially unreliable, induced Hutton LLCs to expend considerable time and money to extricate Machleit/Plaintiffs from its/their poor financial and business-related decisions, and failed to disclose information that should have been disclosed and not withheld early-on in discussions about a possible joint venture. Machleit mislead Hutton LLCs about Machleit's/Plaintiffs' finances, and over the course of time Hutton LLCs became aware of the fact that Machleit mislead others about its/their finances. Machleit/Plaintiff had created a financial hole

of debt that Hutton LLCs began to realize over the course of time and which caused Hutton LLCs to realize the poor business decisions and associated poor financial decisions that Machleit/Plaintiffs made as a matter of course. Machleit's/Plaintiffs' dishonesty, poor finances, and poor business decisions in conjunction with the final "straw that broke the camel's back" e-mail from Cayla Machleit's on January 31, 2020 caused Hutton LLCs to abandon the idea of an operations joint venture agreement. The fact that the parties were not able to reach a meeting of the minds as to a car wash operations joint venture is well established by the lack of an executed car wash operations joint venture agreement, the January 31, 2020 e-mail from Cayla Machleit disavowing any car wash operations joint venture agreement (**Exhibit A**), the admissions of the Plaintiffs at paragraphs 38 and 41 of the Complaint, and the Notices of Termination dated February 5, 2020. (**Collective Exhibit E).** Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

37. Hutton LLCs deny the allegations because the parties were not and could not have been operating as a car wash operations joint venture in light of the fact that the negotiations that Machleit/Plaintiffs label(s) as "draconian" illustrate the lack of a meeting of the minds between the parties as to how a car wash operations joint venture would operate. Over the course of time, Hutton LLCs realized that Machleit/Plaintiffs was/were not sophisticated business operators, Machleit was too stubborn and/or prideful to make changes to operate in what Hutton LLCs considered to be a financially responsible manner, concealed and failed to divulge its/their poor financial standing, did not have the operations capacity or knowledge or wherewithal to work at the speed of Hutton LLCs, and demonstrated poor leadership and organizational judgment as indicated by its/their insistence upon having Machleit's inexperienced, young daughter serve as

the Chief Operating Officer. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

38.     Hutton LLCs deny the allegations as pled because the Letter Agreement speaks for itself and governs all issues related to the same. As stated in that Letter Agreement which is attached hereto as **Exhibit D**, "The Tenants [Machleit] hereby agree that each Landlord [Hutton entities] shall have the right to terminate its Lease by provision of written notice to the Tenant, which right may be exercised in each Landlord's *sole* discretion…. The undersigned specifically agree that the terms of the Exhibit D of the Post-Closing Agreement between Hutton Mach-1 Cedartown, LLC and Triple C Development, Inc. dated June 7, 2019 describing the Principal Terms of the JV Agreement *will not be binding upon the parties*; it being the intent of the parties that the JV Agreement itself will be the binding agreement regarding the Principal Terms of the JV Agreement *upon execution* of the JV Agreement by an affiliate of the Landlords and affiliate of the Tenants." As stated by Cayla Machleit on January 31, 2020, the parties had not reached a meeting of the minds concerning a car wash operations joint venture agreement, and in light of the unreasonable position taken by Machleit/Plaintiffs in its/their January 31, 2020 demands, Hutton LLCs abandoned the idea of a car wash operations joint venture and issued Notices of Termination in accordance with its rights as quoted above from **Exhibit D**. Hutton LLCs aver that such allegations are Machleit's/Plaintiffs' attempt to introduce false and self-serving proof into the record that should be controlled by the Agreements that Machleit/Plaintiffs executed over the course of the parties attempts to reach agreement as to an operations joint venture. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

19

39.    Hutton LLCs deny the allegations of representations and misrepresentations outside of the language of the written Agreements and avers that such allegations are Machleit's/Plaintiffs' attempt to introduce false and self-serving proof into the record that should be controlled by the Agreements that Machleit/Plaintiffs executed over the course of the parties attempts to reach agreement as to an operations joint venture. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

40.    Hutton LLCs deny the allegations as pled. The Agreements that Machleit/Plaintiffs executed during the period of time that the parties were trying to reach a mutually acceptable car wash operations joint venture agreement are controlling over the rights and responsibilities that are governed by each Agreement which speak for themselves. In support of this denial of Machleit's/Plaintiffs' allegations, see the Settlement Agreement and Release of All Claims and the Settlement Terms that are attached hereto as **Exhibits B** and **C** respectively wherein the issues that Machleit/Plaintiffs now seek(s) to raise as to the referenced properties in North Carolina, South Carolina, New Jersey, Alabama, Georgia, Florida, and Pennsylvania were resolved or should have been resolved under the terms and conditions of **Exhibits B** and **C**. The allegations of paragraph 40 serve as another example of Machleit's/Plaintiffs' misstatements and mischaracterizations of the Machleit's/Plaintiffs' involvement. Hutton LLCs denies that Machleit/Plaintiffs was/were instrumental in the development of the properties. To the contrary, Hutton LLCs developed the real properties, incurred the costs, and invested the time (almost a year) that was necessary for the development of the properties, etc. All of this work and investment by Hutton LLCs was done by Hutton LLCs with the hope that a meeting of the minds would occur for a car wash operations joint venture agreement and on Hutton LLC's belief that Machleit/Plaintiffs was/were financially

viable enough to be reliable tenants. In the end, such was not the case as further explained hereinafter. In light of the misrepresentations and material concealments on the part of Machleit/Plaintiffs and with 20/20 hindsight, Hutton LLCs now realizes that a car wash operations joint venture with Machleit/Plaintiffs was destined to never come to fruition. As an example of the progression of the discussions from start to finish, the parties originally envisioned that Machleit/Plaintiffs would split the operational profit of each car wash as follows: Machleit/Plaintiffs would take 70% of the operational profit and Hutton LLCs would take 30% of the operational profit because Machleit/Plaintiffs was/were to invest 100% of the operational expense and time in the envisioned operational joint venture. After the passage of several months of working toward a mutually agreeable car wash operations joint venture and without good faith disclosures by Machleit/Plaintiffs and despite material concealments on the part of Machleit/Plaintiffs, Hutton LLCs realized the need to shoulder 100% of all costs and expenses associated with the development and procurement and operations time and money, so the envisioned split of operational profit shifted to a proposed take of 75% of the operational profit by Hutton LLCs and 25% of the operational profit by Machleit/Plaintiffs. Incredibly after Hutton LLCs invested so much time and money, Machleit/Plaintiffs made unreasonable (even absurd) demands on January 31, 2020 that made it absolutely clear to Hutton LLCs that no mutually agreeable car wash operations joint venture could be achieved with Machleit/Plaintiffs, who went so far as to demand that it/they be able to start and operate another car wash company with Machleit's/Plaintiffs' own family members and employees under a name that would be separate and distinct and at odds with Hutton LLCs despite the financial assistance that Hutton LLCs had thus far provided. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

41.     Hutton LLCs admit that on or around December 22, 2019, Hutton LLCs issued a proposal for a car wash operations joint venture agreement to Machleit/Plaintiffs. (see **Exhibit F**). Hutton LLCs admit that Machleit/Plaintiffs never executed that proposed car wash operations joint venture agreement. In fact, Machleit/Plaintiffs rejected that proposal on January 31, 2020. (see **Exhibit A**). ***The paragraphs 38 and 41 admissions on the part of Machleit/Plaintiffs as to the lack of any meeting of the minds as to a car wash operations joint venture agreement are insightful and controlling.*** Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

42.     Hutton LLCs deny the allegations as pled.  The Agreements that Machleit/Plaintiffs executed during the time that the parties were trying to reach a mutually acceptable car wash operations joint venture agreement are controlling over the rights and responsibilities that are governed by each Agreement which speak for themselves. In support of this denial of Machleit's/Plaintiffs' allegations, see the Settlement Agreement and Release of All Claims and the Settlement Terms that are attached hereto as **Exhibits B** and **C** respectively wherein the issues that Machleit/Plaintiffs now seek(s) to raise as to the referenced properties in North Carolina, South Carolina, New Jersey, Alabama, Georgia, Florida, and Pennsylvania were resolved or should have been resolved under the terms and conditions of **Exhibits B** and **C**. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

43.     Hutton LLCs deny the allegations as pled. The Agreements that Machleit/Plaintiffs executed during the time that the parties were trying to reach a mutually acceptable car wash operations joint venture agreement are controlling over the rights and responsibilities that are governed by each Agreement which speak for themselves. In support of this denial of

22

Machleit's/Plaintiffs' allegations, see the Settlement Agreement and Release of All Claims and the Settlement Terms that are attached hereto as **Exhibits B** and **C** respectively wherein the issues that Machleit/Plaintiffs now seek(s) to raise as to the referenced properties in North Carolina, South Carolina, New Jersey, Alabama, Georgia, Florida, and Pennsylvania were resolved or should have been resolved under the terms and conditions of **Exhibits B** and **C**. The fact that the parties were not able to reach a meeting of the minds as to a car wash operations joint venture is well established by the lack of an executed car wash operations joint venture agreement, the paragraphs 38 and 41 admissions on the part of Machleit/Plaintiffs as to the lack of any meeting of the minds as to a car wash operations joint venture agreement, the January 31, 2020 e-mail from Cayla Machleit disavowing any joint venture agreement (**Exhibit A**), and the Notices of Termination dated February 5, 2020 (**Collective Exhibit E**). Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

44.     Hutton LLCs admit that the parties had worked toward reaching the terms and conditions of a mutually acceptable car wash operations joint venture agreement and in doing so had been involved with around 15 car washes which were referenced in the February 5, 2020 Notices of Termination (**Collective Exhibit E**) that issued in accordance with the Letter Agreement (**Exhibit D**). Hutton LLCs admit that the Notices of Termination affirmed the efforts that Hutton LLCs had exerted in good faith to reach a meeting of the minds and aver that the January 31, 2020 letter from Cayla Machleit disavowing a car wash operations joint venture agreement and demanding unreasonable terms and conditions further establishes the failure of the parties to reach an acceptable joint venture agreement. The unreasonable nature of the January 31, 2020 demands from Cayla Machleit should be considered in the context of Hutton LLCs' work

23

with and associated knowledge of Machleit/Plaintiffs preceding receipt of that e-mail. In other words, Hutton LLCs believed by that time that Machleit/Plaintiffs was/were a financial wreck; did not have good operations knowledge and ability yet nonetheless wanted Machleit to run Operations; and did not have good relations with banks. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

45.     Hutton LLCs admit that the quote is from the Notices of Termination that are attached hereto as **Collective Exhibit E** to satisfy the Rule of Completeness. Hutton LLCs assert that Machleit/Plaintiffs did not refute the fact that the parties had failed to reach a mutually acceptable agreement until this lawsuit which was filed after the parties achieved settlement as to over 20 properties as established by the attached **Exhibits B** and **C** – the Settlement Agreement and Release of All Claims and the Settlement Terms. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

46.     Hutton LLCs do not have sufficient information or knowledge to either admit or deny whether Machleit/Plaintiffs was/were "bewildered" by the Notices of Termination that issued after Hutton LLCs abandoned further discussions upon receipt of the January 31, 2020 demands of Machleit/Plaintiffs which were the proverbial "straw that broke that camel's back." Hutton LLCs aver that the parties communicated about over 20 properties and about the fact that Machleit/Plaintiffs unlawfully withheld money that was due and owing an affiliate business named Berry Construction involving good work by Berry Construction. Despite efforts on the part of Hutton LLCs to avoid litigation by engaging in discussions, Machleit/Plaintiffs stopped speaking with Hutton LLCs and retained counsel. After discussions proved to be unlikely to achieve a

24

reasonable result with Machleit/Plaintiffs, Hutton LLCs resorted to the law and filed Complaints to bring about lawful resolution. Berry Construction likewise filed a lien and a Complaint for the recovery of money unlawfully withheld by Machleit.  The weight of the law in form of the Complaints by Hutton LLCs against Machleit/Plaintiffs and by Berry Construction against Machleit prompted Machleit/Plaintiffs to execute the Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**) which dispose of and make irrelevant all of the foregoing allegations of Machleit/Plaintiff with the exception of issues related to Attalla, Georgetown, and Cherry Hill (and other damages) which will be discussed hereinafter.

Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

47.    Hutton LLCs deny the allegations concerning the "existence of the joint venture" that Machleit/Plaintiff had disavowed as recently as January 31, 2020 (**Exhibit A**) before Hutton LLCs issued the Notices of Termination. (**Collective Exhibit E**).  Hutton LLCs aver that after the parties had communicated about over 20 properties and about the fact that Machleit/Plaintiffs had unlawfully withheld money that was due and owing an affiliate business named Berry Construction involving good work by Berry Construction. Hutton LLCs admit that the discussions were not effective; consequently, Hutton LLCs resorted to legal remedy by filing Complaints against Machleit/Plaintiffs for each of the properties. Berry Construction likewise filed a lien and a Complaint for the recovery of money unlawfully withheld by Machleit. Such filings led to the execution of the Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**) which dispose of and make irrelevant all of the foregoing allegations of the Machleit/Plaintiffs with the exception of the following issues where Machleit/Plaintiffs is/are in breach of its/their responsibilities, i.e., obligations owed to Hutton LLCs related to Attalla,

25

Georgetown, and Cherry Hill. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

48.     Hutton LLCs deny the allegations as pled. Hutton LLCs aver that the parties communicated about over 20 properties and about the fact that Machleit/Plaintiffs had unlawfully withheld money that was due and owing an affiliate business named Berry Construction involving good work by Berry Construction. After discussions proved to be unlikely to achieve a reasonable result with Machleit/Plaintiffs, Hutton LLCs resorted to the law and filed Complaints to bring about lawful resolution. Berry Construction likewise filed a lien and a Complaint for the recovery of money unlawfully withheld by Machleit. In the days and weeks leading up to the filings by or for Berry Construction, Machleit/Plaintiffs promised payment to Berry Construction that never came prior to the filings despite the fact that the money owed was several months overdue. Hutton LLCs eventually realized that this course of dealing on the part of Machleit/Plaintiffs was due to its/their poor business and financial practices which was to take money paid by the bank for one purpose such as paying Peter and use the money instead to pay Paul. The weight of the law in form of the Complaints by Hutton LLCs against Machleit/Plaintiffs and a Complaint filed by Berry Construction prompted Machleit/Plaintiffs to execute the Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**) which dispose of and make irrelevant all of the foregoing allegations of the Plaintiff with the exception of the following issues where Machleit/Plaintiffs is/are in breach of its/their responsibilities, i.e., obligations owed to Hutton LLCs related to Attalla, Georgetown, and Cherry Hill. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

49.     Hutton LLCs admit that after pre-suit discussions proved to be unlikely to achieve a reasonable result with Machleit/Plaintiffs, Hutton LLCs resorted to the law and filed Complaints to bring about lawful resolution.  Berry Construction likewise filed a lien and a Complaint for the recovery of money unlawfully withheld by Machleit. The weight of the law in form of the Complaints by Hutton LLCs against Machleit/Plaintiffs and a Complaint filed by Berry Construction prompted Machleit/Plaintiffs to engage in reasonable discussions to execute the Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**) which dispose of and make irrelevant all of the foregoing allegations of Machleit/Plaintiffs with the exception of the following issues where Machleit/Plaintiffs is/are in breach of its/their responsibilities, i.e., obligations owed to Hutton LLCs related to  Attalla, Georgetown, and Cherry Hill. To the extent that the foregoing allegations of Machleit/Plaintiffs regarding matters related to the execution of the Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**) are designed to introduce parol evidence into the construction of the Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**) or for other unlawful or inequitable purpose, Hutton LLCs aver that such allegations should be stricken.

50.     Hutton LLCs admit the allegations and aver that the attached Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**) constitute such "global settlement."

51.     Hutton LLCs deny the characterization of Machleit/Plaintiffs who had to be sued with the applicable law spelled out to Machleit/Plaintiffs and their counsel in order to get Machleit/Plaintiffs to do what it/they was/were obligated to do. Hutton LLCs admit that the Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**) govern and aver that these documents speak for themselves.

27

52.     Hutton LLCs deny the allegations as pled since the allegations do not fairly or accurately state the terms and conditions regarding the rights and the responsibilities of the parties as to the Cherry Hill property. In support of this position, please see the applicable language from the attached Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**).

53.     Hutton LLCs admit that Machleit/Plaintiffs did what it/they was/were obligated to do by the Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**) except as to the following properties: Attalla, Georgetown, and Cherry Hill. These properties and the material breaches of the Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**) by Machleit/Plaintiffs are the subject of the Counterclaim that Hutton LLCs hereinafter files and explains. So the allegations that Machleit/Plaintiffs complied with its responsibilities as to Attalla (and as to Georgetown and Cherry Hill) are denied.  Hutton LLCs deny any allegations of breach on the part of Hutton LLCs. The good faith effort of Hutton LLCs to negotiate a Global Settlement, at least in part, is evidenced by Hutton, LLCs giving up 3 operating car washes to Machleit/Plaintiffs which helped it/them out of the financial mess that it/they has created with ICWG and otherwise. Hutton LLCs aver that the allegations are irrelevant to this litigation in light of the "Global Settlement Agreement" referenced by the Plaintiffs at paragraph 50.

54.     Hutton LLCs deny the allegations as pled since the allegations do not fairly or accurately state the terms and conditions regarding the rights and the responsibilities of the parties as to the Cherry Hill property. In support of this position, please see the applicable language from the attached Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**). In support of its denial, Hutton LLCs refused to close on the Cherry Hill property

because Machleit/Plaintiffs had failed to perform material obligations which were reasonably necessary and which were conditions precedent to closure. Machleit's/Plaintiffs' history of lack of performance made Hutton LLCs wary of consummating any deal without holding Machleit/Plaintiffs accountable for all material requirements condition precedent to closing. Consider the following in terms of the failures of Machleit/Plaintiffs to comply with the requests:

• The fully executed PSA dated September 20, 2019 (**Exhibit G**) established the rights and responsibilities of the parties.

• Hutton LLCs sent Notice of Outstanding Items and Extension of Inspection Period (IP) via email on 10/21/2019 (**Exhibit H**) which set the stage for deadlines and the obligations that had to be honored.

• Hutton LLCs sent another Notice of Outstanding Items and Extension of Inspection Period (IP) via email on 11/11/2019 (**Exhibit I**) which extended the deadlines and the obligations that had to be honored.

• Hutton LLCs sent Notice of Outstanding Items and Extension of Inspection Period (IP) via email on 12/11/2019 (**Exhibit J**) which again extended the deadlines and the obligations that had to be honored.

• Hutton LLCs sent Notice of Outstanding Items and Extension of Inspection Period (IP) via email on 1/21/2020 (**Exhibit K**) which extended the deadlines and the obligations that had to be honored.

• Hutton LLCs sent the Original Notice of Termination of PSA on 2/5/2020. (**Exhibit L**). Prior to the original Notice of Termination of PSA and prior to entering into the Settlement Agreement (**Exhibits B** and **C**), Hutton LLCs sent the above-referenced 4 notices of outstanding items/unilateral extension of IP to Machleit/Plaintiffs pursuant to Exhibit B of the PSA to allow time for delivery of the outstanding Seller Documents. The IP was extended without any objection from Machleit/Plaintiffs. According to the original Notice of Termination of PSA, the PSA was terminated due to Machleit's/Plaintiffs' failure to enter into the joint venture agreement. Machleit/Plaintiffs had not sent and Hutton LLCs had not received the outstanding Seller Documents listed in the 1/21/2020 notice.

• The Global Settlement Agreement was executed on or about 5/8/2020. (**Exhibit B**). With the exception of closing date (and any other item(s) stated therein), the original terms of the PSA

still governed the transaction (including the right to extend IP to allow time for delivery of outstanding Seller Documents).

• Hutton LLCs sent Notice of Outstanding Items via email on 7/9/2020 (**Exhibit M**) which was another reminder of the obligations that had to be honored.

• Hutton LLCs sent another Notice of Outstanding Items and Extension of Inspection Period on 7/27/2020. (**Exhibit N**).

• Hutton LLCs sent Notice of Termination of the PSA on 8/3/2020 because of the failure of Machleit/Plaintiffs to meet its/their obligations. (**Exhibit O**). The Certificate of Occupancy was still outstanding as of 8/3/2020, so Hutton LLCs were still under IP and had a right to terminate. Also, Machleit did not sign Post Closing Escrow Agreement in his personal capacity.

• Hutton LLCs issued the Demand for Payment of money owed for equipment purchased by Hutton LLCs on 8/6/2020. (**Exhibit P**). Explanation of the equipment owed amount hereinafter follows:

55. Hutton LLCs deny the allegations as pled since the allegations do not fairly or accurately state the terms and conditions regarding the rights and the responsibilities of the parties as to the Cherry Hill property. In support of this position, please see the applicable language from the attached Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**). In support of its denial, Hutton LLCs refused to close on the Cherry Hill property because Machleit/Plaintiffs had failed to perform material obligations that were reasonably necessary and which were conditions precedent to closure. Such obligations included but were not limited to the deficiencies stated in this Answer in paragraph 54.

56. Hutton LLCs deny the allegations as pled since the allegations do not fairly or accurately state the terms and conditions regarding the rights and the responsibilities of the parties as to the Cherry Hill property. In support of this position, please see the applicable language from the attached Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**). In support of its denial, Hutton LLCs refused to close on the Cherry Hill property

because Machleit/Plaintiffs had failed to perform material obligations that were reasonably necessary and which were conditions precedent to closure. Machleit's/Plaintiffs' history of poor performance made Hutton LLCs wary of consummating any deal without holding Machleit/Plaintiffs accountable for all material requirements condition precedent to closing. Such obligations included but were not limited to the deficiencies stated in this Answer in paragraph 54.

57.     Hutton LLCs deny the allegations as pled since the allegations do not fairly or accurately state the terms and conditions regarding the rights and the responsibilities of the parties as to the Cherry Hill property. In support of this position, please see the applicable language from the attached Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**). In support of its denial, Hutton LLCs refused to close on the Cherry Hill property because Machleit/Plaintiffs had failed to perform material obligations that were reasonably necessary and which were conditions precedent to closure. The practice of Hutton LLCs is to sign closing statements so that the same are ready for the closing and which are held in escrow and are not released until the conditions precedent to closing have been fulfilled. In this case, Machleit/Plaintiffs did not fulfill the condition precedent as outlined in Exhibit O above; consequently, the title company did not release the funds from escrow. Such obligations included but were not limited to the deficiencies stated in this Answer in paragraph 54.

58.     Hutton LLCs deny the allegations as pled since the allegations do not fairly or accurately state the terms and conditions regarding the rights and the responsibilities of the parties as to the Cherry Hill property. In support of this position, please see the applicable language from the attached Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**). In support of its denial, Hutton LLCs refused to close on the Cherry Hill property because Machleit/Plaintiffs had failed to perform material obligations that were reasonably

necessary and which were conditions precedent to closure. Such obligations included but were not limited to the deficiencies stated in this Answer in paragraph 54.

59.     Hutton LLCs deny the allegations as pled since the allegations do not fairly or accurately state the terms and conditions regarding the rights and the responsibilities of the parties as to the Cherry Hill property. In support of this position, please see the applicable language from the attached Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**). In support of its denial, Hutton LLCs refused to close on the Cherry Hill property because Machleit/Plaintiffs had failed to perform material obligations that were reasonably necessary and which were conditions precedent to closure.  Such obligations included but were not limited to the deficiencies stated in this Answer in paragraph 54.

60.     Hutton LLCs deny the allegations as pled since the allegations do not fairly or accurately state the terms and conditions regarding the rights and the responsibilities of the parties as to the Cherry Hill property. In support of this position, please see the applicable language from the attached Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**). In support of its denial, Hutton LLCs refused to close on the Cherry Hill property because Machleit had failed to perform material obligations that were reasonably necessary and which were conditions precedent to closure.  Such obligations included but were not limited to the deficiencies stated in this Answer in paragraph 54.

61.     Hutton LLCs deny the allegations as pled since the allegations do not fairly or accurately state the terms and conditions regarding the rights and the responsibilities of the parties as to the Cherry Hill property. In support of this position, please see the applicable language from the attached Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**). In support of its denial, Hutton LLCs refused to close on the Cherry Hill property

because Machleit had failed to perform material obligations that were reasonably necessary and which were conditions precedent to closure. Such obligations included but were not limited to the deficiencies stated in this Answer in paragraph 54. In short, Machleit/Plaintiffs did not complete the items required by Hutton LLCs for the closing which included such material items as a Certificate of Occupancy that was not provided to Hutton LLCs.

62. Hutton LLCs deny the allegations. On the contrary, Hutton LLCs rely upon the attached Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**) in support of Hutton LLC's Counterclaim stated hereinafter.

63. Hutton LLCs deny the allegations. To the extent that the foregoing allegations of Machleit/Plaintiffs regarding matters related to the execution of the Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**) are designed to introduce parol evidence into the construction of the Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**) or for other unlawful or inequitable purpose, Hutton LLCs aver that such allegations should be stricken. Using Cherry Hill as an example of Machleit's/Plaintiffs' misstatements and mischaracterizations of performance obligations, Machleit/Plaintiffs did not perform the material requirements that were stated in Hutton LLCs' August 3, 2020 Notice of Termination which included an element as essential and important to the closing as a Certificate of Occupancy that Machleit/Plaintiffs had to provide but failed to provide as a condition precedent to closing.

64. Hutton LLCs do not have sufficient information or knowledge to either admit or deny what Machleit/Plaintiffs "contemplated" outside of what was expressed as the rights and responsibilities of Machleit/Plaintiffs in the Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**). Hutton LLCs deny that Machleit/Plaintiffs fulfilled

33

material obligations that were reasonably necessary. Such obligations included but were not limited to the deficiencies stated in this Answer in paragraph 54.

65. Hutton LLCs deny the allegations. The fact that Machleit/Plaintiffs did not have the financial capacity to enter into a joint venture agreement with Hutton LLCs and misled and concealed matters related to the same is good evidence of bad faith on the part of Machleit/Plaintiffs.

66. Hutton LLCs deny all allegations of breach on the part of Hutton LLCs serving as the cause of Machleit's/Plaintiffs' circumstances. As is evident from Machleit's/Plaintiffs' prior course of dealings, Machleit/Plaintiffs seem(s) to be incapable of or unwilling to accept responsibility for its/their faults and shortcomings, and the same attitudes or conduct related to its/their failures to meet the responsibilities as to Cherry Hill are a continuation of the same or similar faults and shortcomings. After all, what reasonable businessperson would contend that a car wash operations joint venture agreement was achieved in light of the January 31, 2020 e-mail of Cayla Machleit? Similarly, what reasonable businessperson would contend compliance with all material duties in advance of the purchase/sale of Cherry Hill without having satisfied the litany of shortcomings stated in this Answer in paragraph 54? Machleit's/Plaintiffs' closing of Cherry Hill cannot reasonably be related to Hutton LLCs, who had purchased and installed equipment worth $641,505.19 (with shipping and installation costs included the worth was $761,515.39 plus interest). Machleit/Plaintiffs shut down operations at Cherry Hill, NJ due to the Covid-19 shut-down imposed in New Jersey months prior to the anticipated closing and never resumed operations.

67. The clause that is the subject of paragraph 67 does not state an allegation that is requires responsive pleading. Hutton LLCs contend that the majority of the allegations in the

Complaint are irrelevant to this lawsuit and were made with an unlawful and inequitable intent of trying to introduce parol evidence to construe agreements that the Plaintiff executed with the oversight of counsel.

## COUNT I - BREACH OF CONTRACT

68.     Hutton LLCs adopt and incorporate by reference its Answers to the allegations in the Complaint numbered 1 – 67.

69.     Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim.

70.     Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim.

71.     Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim.

72.     Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim.

## COUNT II - BREACH OF EXPRESS AND IMPLIED WARRANTIES

73.     Hutton LLCs adopt and incorporate by reference the Answers to the allegations in the Complaint numbered 1 – 72.

74.     Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim. Machleit/Plaintiffs was/were obligated to perform conditions precedent to the closing, failed to do so, and accordingly breached its/their duties and thereby damaged Hutton LLCs.

75.     Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim. Machleit/Plaintiffs was/were

obligated to perform conditions precedent to the closing, failed to do so, and accordingly breached its/their duties and thereby damaged Hutton LLCs.

76.     Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim. Machleit/Plaintiffs was/were obligated to perform conditions precedent to the closing, failed to do so, and accordingly breached its/their duties and thereby damaged Hutton LLCs.

77.     Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim. Machleit/Plaintiffs was/were obligated to perform conditions precedent to the closing, failed to do so, and accordingly breached its/their duties and thereby damaged Hutton LLCs.

### COUNT III - FRAUD

78.     Hutton LLCs adopt and incorporate by reference the Answers to the allegations in the Complaint numbered 1 – 77.

79.     Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim. Machleit/Plaintiffs was/were obligated to perform conditions precedent to the closing, failed to do so, and accordingly breached its/their duties and thereby damaged Hutton LLCs.

80.     Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim. Machleit/Plaintiffs was/were obligated to perform conditions precedent to the closing, failed to do so, and accordingly breached its/their duties and thereby damaged Hutton LLCs.

## COUNT IV - PROMISSORY FRAUD

81.     Hutton LLCs adopt and incorporate by reference the Answers to the allegations in the Complaint numbered 1 – 80.

82.     Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim. Machleit/Plaintiffs was/were obligated to perform conditions precedent to the closing, failed to do so, and accordingly breached its/their duties and thereby damaged Hutton LLCs.

83.     Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim. In support of its denial, Hutton LLCs refused to close on the Cherry Hill property because Machleit/Plaintiffs had failed to perform material obligations which were reasonably necessary and which were conditions precedent to closure. Machleit's/Plaintiffs' history of lack of performance made Hutton LLCs wary of consummating any deal without holding Machleit/Plaintiffs accountable for all material requirements condition precedent to closing. Such obligations included but were not limited to the statements as aforesaid at paragraph 48. Machleit/Plaintiffs was/were obligated to perform conditions precedent to the closing, failed to do so, and accordingly breached its/their duties and thereby damaged Hutton LLCs.

84.     Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim. Machleit/Plaintiffs was/were obligated to perform conditions precedent to the closing, failed to do so, and accordingly breached its/their duties and thereby damaged Hutton LLCs.

85.     Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim. Machleit/Plaintiffs was/were

37

obligated to perform conditions precedent to the closing, failed to do so, and accordingly breached its/their duties and thereby damaged Hutton LLCs.

<u>**COUNT V - EQUITABLE RELIEF**</u>

86. Hutton LLCs adopt and incorporate by reference the Answers to the allegations in the Complaint numbered 1 – 85.

87. Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim. Machleit/Plaintiffs was/were obligated to perform conditions precedent to the closing, failed to do so, and accordingly breached its/their duties and thereby damaged Hutton LLCs.

<u>**COUNT VI - DECLARATORY JUDGMENT**</u>

88. Hutton LLCs adopt and incorporate by reference the Answers to the allegations in the Complaint numbered 1 – 87.

89. Hutton LLCs admit the allegations.

90. Hutton LLCs admit that an actual controversy exists for resolution. To the extent that such resolution involves material questions of fact, the jury that Machleit/Plaintiffs has /have demanded should decide the same. To the extent that resolution can be achieved as a matter of law on Motion for Summary Judgment as to all or any issues, this Court is the appropriate forum for such resolution.

91. Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim. Machleit/Plaintiffs was/were obligated to perform conditions precedent to the closing, failed to do so, and accordingly breached its/their duties and thereby damaged Hutton LLCs.

38

## COUNT VII - BREACH OF FIDUCIARY DUTY

92.     Hutton LLCs adopt and incorporate by reference the Answers to the allegations in the Complaint numbered 1 – 91.

93.     Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim. Machleit/Plaintiffs was/were obligated to perform conditions precedent to the closing, failed to do so, and accordingly breached its/their duties and thereby damaged Hutton LLCs.

94.     Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim. Machleit/Plaintiffs was/were obligated to perform conditions precedent to the closing, failed to do so, and accordingly breached its/their duties and thereby damaged Hutton LLCs.

95.     Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim. Machleit/Plaintiffs was/were obligated to perform conditions precedent to the closing, failed to do so, and accordingly breached its/their duties and thereby damaged Hutton LLCs.

96.     Hutton LLCs deny the allegations as explained in the Answer through the preceding allegations and as hereinafter explained in the Counterclaim. Machleit/Plaintiffs was/were obligated to perform conditions precedent to the closing, failed to do so, and accordingly breached its/their duties and thereby damaged Hutton LLCs. Hutton LLCs deny all allegations of any proprietary information of Machleit/Plaintiffs that Hutton LLCs acquired or used. Hutton LLCs deny all allegations that Machleit/Plaintiffs took any measures to protect any information or documentation that it now claims was proprietary. In fact, the information that Machleit/Plaintiffs

39

did provide was usually useless and required time and effort and work on the part of Hutton LLCs to discern the problems/errors contained therein.

## JURY DEMAND

97.     Hutton LLCs deny that the statement or assertion of paragraph 97 requires responsive pleading. But as stated hereinafter, Hutton LLCs demand a jury of 12 to adjudicate any and all genuine issues of material fact.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Hutton LLCs aver that Machleit/Plaintiffs has/have failed to state a claim for which relief may be granted.

### SECOND DEFENSE

Hutton LLCs aver the affirmative defense of unclean hands as a bar to any right of recovery on the part of Machleit/Plaintiffs who worked to the detriment of Hutton LLCs.

### THIRD DEFENSE

Hutton LLCs aver the affirmative defenses of waiver and estoppel as a bar to any right of recovery on the part of the Machleit/Plaintiffs.

### FOURTH DEFENSE

Hutton LLCs aver accord and satisfaction as a defense.

### FIFTH DEFENSE

Machleit/Plaintiffs intentionally interfered with the business relationships and the prospective business relationships of Hutton LLCs as to Sonny's and perhaps as to others as

40

discovery may reveal. Equitably, Machleit/Plaintiffs should be barred from any right recovery of damages due to such tortious interferences.

## SIXTH DEFENSE

During Machleit/Plaintiffs' work with Hutton LLCs, it/they had a fiduciary duty of loyalty to Hutton LLCs. Under such fiduciary duty, Machleit/Plaintiffs was/were required to act for the benefit of the Hutton LLCs. Machleit/Plaintiffs was/were prohibited from engaging in conduct that was adverse to Hutton LLCs. Efird v. Clinic of Plastic & Reconstructive Surgery, P.A. 147 S.W.3d 208, 219) (Tenn. Ct. App. 2003) (quoting Knott's Wholesale Foods, Inc. v. Azbell, No. 01A-01-9510-CH-00459, 1996 W.L. 697943 at *3 (Tenn. Ct. App. Dec. 6, 1996)). This duty of loyalty includes, of course, a duty not to compete with the Hutton even in the absence of a non-competition agreement. Machleit/Plaintiffs' breach of their fiduciary duty of loyalty constituted a justifiable basis for termination of any planned or proposed joint venture. As a consequence, Machleit/Plaintiffs should equitably be barred from any recovery from Hutton LLCs. Furthermore, Machleit/Plaintiffs should be held liable to Hutton LLCs for damages.

## SEVENTH DEFENSE

To the extent that Machleit/Plaintiffs failed to mitigate its alleged damages, it/they is/are barred from any right of recovery.

## EIGHTH DEFENSE

Hutton LLCs aver a failure in the meeting of minds as a bar to any right of recovery by Machleit/Plaintiffs.

## NINTH DEFENSE

Machleit/Plaintiffs committed the first material breach of the Settlement Agreement and Release of All Claims and the Settlement Terms (**Exhibits B** and **C**). Accordingly, Machleit/Plaintiffs is/are not entitled to any recovery of damages after its/their first material breach.

## TENTH DEFENSE

Machleit/Plaintiffs made intentional misrepresentations of material fact to Hutton LLCs that Hutton LLCs reasonably relied upon and in doing so damaged Hutton LLCs. Machleit/Plaintiffs should equitably be barred from any right recovery of damages related to such intentional misrepresentations.

## ELEVENTH DEFENSE

Machleit/Plaintiffs made misrepresentations of material fact by concealment to Hutton LLCs that Hutton LLCs reasonably relied upon and in doing so damaged Hutton LLCs. Machleit/Plaintiffs should equitably be barred from any right recovery of damages related to such misrepresentations by concealment.

## TWELFTH DEFENSE

Machleit/Plaintiffs made promises to Hutton LLCs without any intent to perform in accordance with such promises to Hutton LLCs that Hutton LLCs reasonably relied upon and in doing so damaged Hutton LLCs. Machleit/Plaintiffs should equitably be barred from any right recovery of damages related to such promises that were not fulfilled.

## THIRTEENTH DEFENSE

Machleit/Plaintiffs negligently made misrepresentations of material fact to Hutton LLCs that Hutton LLCs reasonably relied upon and in doing so damaged Hutton LLCs. Machleit/Plaintiffs should equitably be barred from any right recovery of damages related to such misrepresentations.

## FOURTEENTH DEFENSE

Any and all allegations not heretofore admitted, denied or explained by Hutton LLCs are expressly denied.

WHEREFORE, having answered the Complaint, Defendant / Counter-Plaintiffs pray for a jury of twelve (12) to try any and all genuine issues of material fact and for the causes of action states the following in support of the Counterclaim:

## COUNTERCLAIM

Comes now Counter-Plaintiffs, Hutton ST 17, LLC and/or Karen Hutton, ("Landlord" or "Hutton LLCs"), by and through counsel and pursuant to Rules 3, 8, and 10 of the Federal Rules of Civil Procedure, and for its cause of action state:

## STATEMENT OF FACTS

1.  The Counter-Plaintiffs, Hutton ST 17, LLC's (hereinafter, "Hutton LLCs") principal place of business is located at 736 Cherry Street, Chattanooga, Hamilton County, Tennessee 37402. The registered agent of Hutton LLCs is Corporation Service Company, with a mailing address of 100 Charles Ewing Blvd., Princeton S. Corporate Centre, Suite 160, Ewing, New Jersey, 08628. Hutton is a Delaware Limited Liability Company. As stated in the Global Settlement documents, Karen Hutton, and all "companies and subsidiary companies operating

43

under the direction or control of Hutton", is located at 736 Cherry Street, Chattanooga, Hamilton County, Tennessee, 37402, and was a signatory to the Global Settlement Agreement.

2.      The Counter-Defendant, Triple C Development, Inc.'s (hereinafter, "Triple C") principal place of business is Centre, Alabama. The registered agent of Triple C is Counter-Defendant Jay Machleit, with a mailing address of 905 County Road 528, Centre, Alabama 35960. Triple C is an Alabama Domestic Corporation.

3.      The member manager of Triple C is Counter-Defendant Jay Machleit, whose mailing address is 200 Armory Road, Centre, Alabama 35960.

4.      Jay Machleit (Machleit) is an adult resident of the State of Alabama and is the sole member of Mach-1 Express Wash, LLC (Mach-1) which is a limited liability company that was organized in accordance with and exists under the laws of the State of Delaware.

5.      Mach-1 Express Wash of Attalla, LLC is an Alabama Limited Liability Company with principal place of business registered at 200 Armory Road, Centre, Alabama, 35960. Jay Machleit is the Organizer of this LLC, is the Manager, and is located at the address of Machleit, who controls this entity.

6.      On May 8, 2020, Hutton ST 17, LLC and Hutton Mach-1, LLC and Jay Machleit, resident of the State of Alabama, Triple C Development, Inc., Mach-1 Express Wash of Cherry Hill, LLC; Mach-1 Express Wash of Attalla, LLC, and others executed a Confidential Settlement Agreement and Release of All Claims and a document attached thereto named Settlement Terms (**Exhibits B** and **C**) that constituted a "global settlement of all claims and disputes between them and to settle all pending litigation." (**Exhibit B** at para. 1).

7.      **Exhibits B** and **C** stated as follows in pertinent part as to the governing law and jurisdiction: "███████████████████████████████████████████████

44

■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■"

8.      As stated by Machleit/Plaintiffs at paragraphs 8 and 9 of the Complaint, jurisdiction and venue are proper in this Court because of the forum selection clauses identified above in **Exhibits B** and **C** at paragraphs 17 and 18 and because of diversity of the parties as shown above and because the amount in controversy exceeds $75,000.00 exclusive of costs and fees.

9.      Under paragraph II. Agreement Regarding Particular Carwash Locations, the parties agreed to address their dispute concerning Attalla, AL; Georgetown, DE; and Cherry Hill, NJ as explained in the Settlement Terms (**Exhibit C** to this Answer).

10.      Since the May 8, 2020 execution of the Confidential Settlement Agreement and Release of All Claims and the Settlement Terms, a dispute has arisen between the parties as to Attalla, Georgetown, and Cherry Hill and damages associated with Machleit's/Plaintiffs' breach of the Global Settlement Documents.

11.      Hutton LLCs aver as follows against Machleit/Plaintiffs in support of the allegations of liability and associated damages caused and owed by Machleit/Plaintiffs:

## BREACH OF CONTRACT

### Attalla

12.      Under the terms of the Confidential Settlement Agreement and Release of All Claims and Settlement Terms (Global Settlement Documents) applicable to Attalla, Machleit/Plaintiffs was/were obligated to close on the purchase of the Attalla location by July 31, 2020 since the closing deadline had been extended in accordance with the terms of the Global Settlement.

45

13.     Machleit/Plaintiffs failed to close in accordance with the terms of the Global Settlement, so the Lease Agreement automatically terminated.

14.     Under the terms of the Global Settlement, Machleit/Plaintiffs were obligated to leave the premises "███████████████████████████████"

15.     Under the terms of the Lease Agreement at "Article V Tenant's Covenants", Machleit/Plaintiffs were obligated to do the following in pertinent part:

> (d)     Tenant shall be responsible for and shall pay the cost of removal of any of Tenant's refuse, garbage and recycling, and maintain all loading areas, trash dumpsters, and enclosures in a clean manner satisfactory to the Landlord.
>
> (e)     To keep and maintain and repair the Demised Premises and the whole thereof in clean, safe and good operating condition and state of repair, reasonable wear and tear alone excepted and to place and keep the Demised Premises and Tenant's operations thereon in compliance with all laws and regulations and Tenant acknowledges that Landlord has absolutely no duty of repair and replacement thereunder.
> ***
> (j) At the end of the term herein specified (including any Renewal Terms(s)), or upon the earlier termination of the term herein provided for, to peaceably yield up to Landlord said Demised Premises and the whole thereof in as good condition and state of repair as the same shall be at the Commencement Date, reasonable wear and tear excepted.

16.     Machleit/Plaintiffs did not vacate the Attalla premises as required but rather left the premises in a filthy condition with broken equipment that had not been properly maintained (or was intentionally or recklessly broken) and that had not been repaired.

17.     As of the date of filing this Counterclaim, Machleit/Plaintiffs have not complied with the obligations as to the cleaning of the property and the repair of the equipment.

18.     Under the terms of the Lease Agreement at Article V, paragraphs (h) and (i), Machleit/Plaintiffs are liable to Hutton LLCs for attorneys' fees necessarily incurred by Hutton LLCs in this litigation related to Attalla and for "such sum or sums … and the cost of such work,

46

together with a supervision fee equal to ten percent (10%) of the cost of improvements, … and all such amounts so expended by Landlord shall bear interest at the rate of the greater of (1) eighteen percent (18%) per annum or (2) the highest rate permitted by applicable law …."

19. Machleit/Plaintiffs are liable to Hutton LLCs for all costs, fees, and expenses, including but not limited to attorney fees and costs (see page 2 at the last paragraph of the Settlement Terms and the Lease Agreement at Article V, paragraph (h)) related to the damages caused by the breach of Machleit's/Plaintiffs' obligations.

## Georgetown

20. Under the terms of the Global Settlement Documents applicable to Georgetown, Machleit/Plaintiffs are liable to Hutton LLCs for $48,275.00 plus interest for out-of-pocket due diligence expenses incurred by Hutton.

21. Machleit/Plaintiffs have not paid the debt and are liable to Hutton LLCs for $48,275.00 plus all accrued interest and plus costs and expenses, including but not limited to attorney fees and expenses (see page 2 at the last paragraph of the Settlement Terms), related to the damages caused by the breach of Machleit's/Plaintiffs' obligations.

## Cherry Hill

22. Under the terms of the Global Settlement Documents applicable to Cherry Hill, Machleit/Plaintiffs were obligated to "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"

23. Machleit/Plaintiffs had a duty to ensure that the Cherry Hill was not encumbered, to ensure that all permitting for the use of the property had been secured so that the purpose for

47

which the purchase was to be made would be fulfilled without interruption, to exercise good faith and fair dealing with Hutton LLC's several requests for information and documentation in the possession or custody of Machleit/Plaintiffs so that the intended use of the property as a car wash business could be effectuated without interruption, etc.

24. As shown by the following communications from Hutton LLCs in advance of any closing on Hutton LLCs' planned purchase of Cherry Hill, Machleit/Plaintiffs failed to provide the requested information and documentation and thereby effectively terminated the purchase. Consider the following in terms of the failures of Machleit/Plaintiffs to comply with the requests:

• The fully executed PSA dated September 20, 2019 (**Exhibit G**) established the rights and responsibilities of the parties.

• Hutton LLCs sent Notice of Outstanding Items and Extension of Inspection Period (IP) via email on 10/21/2019 (**Exhibit H**) which set the stage for deadlines and the obligations that had to be honored.

• Hutton LLCs sent another Notice of Outstanding Items and Extension of Inspection Period (IP) via email on 11/11/2019 (**Exhibit I**) which extended the deadlines and the obligations that had to be honored.

• Hutton LLCs sent Notice of Outstanding Items and Extension of Inspection Period (IP) via email on 12/11/2019 (**Exhibit J**) which again extended the deadlines and the obligations that had to be honored.

• Hutton LLCs sent Notice of Outstanding Items and Extension of Inspection Period (IP) via email on 1/21/2020 (**Exhibit K**) which extended the deadlines and the obligations that had to be honored.

• Hutton LLCs sent the Original Notice of Termination of PSA on 2/5/2020. (**Exhibit L**). Prior to the original Notice of Termination of PSA and prior to entering into the Settlement Agreement (**Exhibits B** and **C**), Hutton LLCs sent the above-referenced 4 notices of outstanding items/unilateral extension of IP to Machleit/Plaintiffs pursuant to Exhibit B of the PSA to allow time for delivery of the outstanding Seller Documents. The IP was extended without any objection from Machleit/Plaintiffs. According to the original Notice of Termination of PSA, the PSA was terminated due to Machleit's/Plaintiffs' failure to enter into the joint venture agreement.

48

Machleit/Plaintiffs had not sent and Hutton LLCs had not received the outstanding Seller Documents listed in the 1/21/2020 notice.

• The Global Settlement Agreement was executed on or about 5/8/2020. (**Exhibit B**). With the exception of closing date (and any other item(s) stated therein), the original terms of the PSA still governed the transaction (including the right to extend IP to allow time for delivery of outstanding Seller Documents).

• Hutton LLCs sent Notice of Outstanding Items via email on 7/9/2020 (**Exhibit M**) which was another reminder of the obligations that had to be honored.

• Hutton LLCs sent another Notice of Outstanding Items and Extension of Inspection Period on 7/27/2020. (**Exhibit N**).

• Hutton LLCs sent Notice of Termination of the PSA on 8/3/2020 because of the failure of Machleit/Plaintiffs to meet its/their obligations. (**Exhibit O**). The Certificate of Occupancy was still outstanding as of 8/3/2020, so Hutton LLCs were still under IP and had a right to terminate. Also, Machleit did not sign Post Closing Escrow Agreement in his personal capacity.

• Hutton LLCs issued the Demand for Payment of money owed for equipment purchased by Hutton LLCs on 8/6/2020. (**Exhibit P**). Explanation of the equipment owed amount hereinafter follows:

25. On February 5, 2020, Karen Hutton as President and Chief Executive Officer of the Landlords issued a letter to Triple C Development, Inc. regarding Cherry Hill that stated in pertinent part as follows (**Exhibit L**):

> Although the parties negotiated in good faith to enter into a joint venture, we were unable to reach a mutual agreement regarding a joint venture. As a result, Buyer [Hutton LLCs] is hereby exercising its rights under Section 1(d) of the Contract and Seller shall within 30 days of receipt of this letter … (1) reimburse Buyer for the total costs of the Equipment and related expenses in the amount of $784,952.88 as evidenced by the list of Equipment expenses incurred by the Seller with copies of the paid invoices enclosed herein as Exhibit A and Lease will … terminate upon such payment….

49

26.     Section 1(d) of the Contract to Buy and Sell Real Property that was executed by

Hutton ST 17, LLC and Triple C Development, Inc., provides in pertinent part as follows:

"[I]n the event that Buyer, or its affiliates, and Seller, or its affiliates, fail to enter

into a mutually agreeable JV Agreement…, then Buyer may send written notice to

Seller and Seller shall have, within thirty (30) days of Buyer's notice to Seller, …

reimburse Buyer for the total cost of the Equipment plus all other cost and expenses

incurred or due…"

The Seller and Buyer agreed that purchase price of the Equipment by Hutton LLCs was

$641,505.19 not including interest and shipping and installation costs. With shipping and

installation cost, the total amount owed was $761,515.39 plus interest. (**Exhibit G**).

27.     The demand amount stated at paragraph 25 per the February 5, 2020 letter has now

increased due to the accrual of interest to $84,619.52 and continues to accrue daily. At present as

of January 15, 2021, the total amount owed is $846,134.91. The attorneys' fees that Hutton LLCs

are incurring for the collection of the money owed for the equipment are also damages the

Machleit/Plaintiffs owe Hutton LLCs because of the material breaches of the Machleit/Plaintiffs

of its/their obligations.

## INTENTIONAL MISREPRESENTATION

28.     Hutton LLCs hereby incorporate by reference each of the facts stated in the

preceding paragraphs 1 – 27  and further states for its cause of action against Machleit/Plaintiffs

based upon intentional misrepresentation that Machleit/Plaintiffs made representations of facts;

the representations were false when made; the representations were in regard to material facts; the

false representations were made knowingly or without belief in the truth of the same; Hutton LLCs

reasonably relied upon the misrepresented material facts; and Hutton LLCs suffered damages as a

50

result of the misrepresentations as aforesaid in regard to Attalla, Georgetown, and Cherry Hill plus other damages related to the dealings as a whole.

## MISREPRESENTATION BY CONCEALMENT

29.     Hutton LLCs hereby incorporate by reference each of the facts stated in the preceding paragraphs 1 – 28 and further states for its cause of action against the Machleit/Plaintiffs based upon misrepresentation by concealment as follows:

30.     Machleit/Plaintiffs had or should have had a fiduciary relationship with Hutton LLCs that required disclosure of known material facts. Machleit/Plaintiffs concealed material facts from Hutton LLCs; Machleit/Plaintiffs was under a duty to disclose the material facts to Hutton LLCs; Machleit/Plaintiffs intentionally concealed the facts with the intent to deceive Hutton LLCs; Hutton LLCs were not aware of the facts that Machleit/Plaintiffs concealed and would have acted differently in its dealings if it had known of the concealed facts; and as a result of the concealment, Hutton LLCs suffered significant damage as aforesaid in regard to Attalla, Georgetown, and Cherry Hill plus other damages related to the dealings as a whole.

## PROMISSORY FRAUD

31.     Hutton LLCs hereby incorporate by reference each of the facts stated in the preceding paragraphs 1 – 30 and further states for its cause of action against Machleit/Plaintiffs based upon promissory fraud as follows:

32.     Machleit/Plaintiffs made a promises to Hutton LLCs as aforesaid in its Answer and as to this Counterclaim related to Attalla, Georgetown, and Cherry Hill and dealings with Machleit/Plaintiffs as a whole; when Machleit/Plaintiffs made the promises it/they did not intend to perform or could not have reasonably intended to perform; Machleit/Plaintiffs made the promises with an intent to deceive Hutton LLCs or to induce Hutton LLCs to act in reliance upon

the promises; Hutton LLCs were unaware that Machleit/Plaintiffs did not intend to perform; Hutton LLCs acted in reliance upon the promises; Hutton LLCs were justified in relying upon the promises; and as a result of the reliance Hutton LLCs sustained damage for which it should be compensated as aforesaid in regard to losses related to Attalla, Georgetown, and Cherry Hill plus other damages related to the dealings as a whole.

## NEGLIGENT MISREPRESENTATION

33.     Hutton LLCs hereby incorporate by reference each of the facts stated in the preceding paragraphs 1 – 32 and further states for its cause of action against Machleit/Plaintiffs based upon negligent misrepresentation as follows:

34.     Machleit/Plaintiffs were in the course of doing business with Hutton LLCs; Machleit/Plaintiffs negligently supplied Hutton LLCs with false information; Machleit/Plaintiffs intended the information to guide Hutton LLCs in its business transactions with Machleit/Plaintiffs; Hutton LLCs justifiably relied upon the false information; and as a result Hutton LLCs suffered financial loss as aforesaid related to Attalla, Georgetown, and Cherry Hill plus other damages related to the dealings as a whole.

## INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS

35.     Hutton LLCs incorporate by reference each of the facts stated in the preceding paragraphs 1 – 34 and further state for its cause of action against the Plaintiff/ Counter-Defendants based upon intentional interference with business relationships as follows:

36.     Hutton LLCs had a prospective business relationship with Sonny's.

37.     Machleit/Plaintiffs knew of the relationships of Sonny's with Hutton LLCs.

38.     Machleit/Plaintiffs intended to cause a breach or termination of the business relationships or business prospects with Hutton LLCs.

39.     Machleit/Plaintiffs used improper motive or means to interfere with the business relationships and business prospects of Hutton LLCs with Sonny's.

40.     Hutton LLCs suffered damages as a result of Machleit's/Plaintiffs' interference.

## EQUITABLE ESTOPPEL

41.     Hutton LLCs hereby incorporate by reference each of the facts stated in the preceding paragraphs 1 – 40 and invoke the doctrine of equitable estoppel to vest in Hutton LLCs the right of recovery of damages suffered due to the bad faith, unfair dealings, deceits, misrepresentations, concealments, and other wrongdoings stated hereinabove on the part of Machleit/Plaintiffs.

## QUANTUM MERUIT and UNJUST ENRICHMENT

42.     Hutton LLCs hereby incorporate by reference each of the facts stated in the preceding paragraphs 1 - 41 and invoke the doctrines of quantum meruit and unjust enrichment to vest in Hutton LLCs the right of recovery of damages suffered due to the bad faith, unfair dealings, deceits, misrepresentations, concealments, and other wrongdoings stated hereinabove on the part of Machleit/Plaintiffs.

**WHEREFORE**, Hutton LLCs pray for the following relief:

43.     For a jury of twelve to adjudicate any and all genuine issues of material fact and after having done so award Hutton LLCs compensatory damages caused by the breaches, wrongdoings, and bad acts of Machleit/ Triple C;

44.     For a jury of twelve to award Hutton LLCs with all pre-judgment interest due and owing due to the wrongdoing and bad acts of Machleit/ Triple C;

53

45. For a jury of twelve to award Hutton LLCs with punitive damages to deter Machleit/Plaintiffs from further damaging others and to deter such wrongdoings and bad actions related to intentional interference with business relationships;

46. For an award of attorney fees and costs and expenses; and

47. For an award of all other relief and compensation that is appropriate under the laws and equities of the State of Tennessee and the Sixth Circuit.

48. For the costs of this action to be taxed against Machleit/Plaintiffs.

*Respectfully submitted,*

**HARWELL LAW GROUP, PLLC**

By: ___*s/Marc H. Harwell*_____
    MARC H. HARWELL, BPR #013817
    *Attorneys for Hutton LLCs*
    832 Georgia Avenue, Suite 510
    Chattanooga, TN 37402
    Direct: 423-756-7333
    Fax: 423-760-4830
    marc@harwelllawgroup.com

## CERTIFICATE OF SERVICE

     I, the undersigned attorney, do hereby certify that the foregoing document has been served upon all counsel/parties in this cause via the court's CM/ECF system or by placing a true and correct copy of same in the United States mail, postage prepaid, in a properly addressed envelope as follows:

H. Gregory Harp, Esq.
Gregory Harp, LLC
P.O. Box 26
Trussville, AL 35173
gh@gregoryharplaw.com

This the 18th day of January, 2021.

By: _s/Marc H. Harwell_
Marc H. Harwell